# 17-4151,18-668(L)&18-2193(con.)

IN THE

## United States Court of Appeals

FOR THE SECOND CIRCUIT

▶▶ ◀◀

NORMA KNOPF and MICHAEL KNOPF,

*Plaintiffs-Appellants,*

*against*                                                                Dkt No. 17-4151

FRANK ESPOSITO, DORSEY & WHITNEY, LLP, NATHANIEL H. AKERMAN, EDWARD S. FELDMAN and MICHAEL HAYDEN SANFORD,

*Defendants-Appellees,*

NORMA KNOPF and MICHAEL KNOPF,

*Plaintiffs-Appellants,*

ERIC W. BERRY, ESQ.

*Appellant,*                          Dkt Nos. 18-668(L), 18-2193(con)

*against*

FRANK ESPOSITO, DORSEY & WHITNEY, LLP, NATHANIEL H. AKERMAN, EDWARD S. FELDMAN and MICHAEL HAYDEN SANFORD,

*Defendants-Appellees.*

On Appeal from the United States District Court for the Southern District of New York

## APPELLANTS' REPLY BRIEF

Eric W. Berry
c/o Berry Law PLLC
*Attorney for Plaintiffs-Appellants*
  *Michael and Norma Knopf*
  *and Appellant Pro Se*
745 Fifth Avenue, 5th Floor
New York, New York 10151
(212) 355-0777
berrylawpllc@gmail.com

Gary Greenberg, Esq.
*Attorney for Plaintiffs-Appellants*
  *Michael and Norma Knopf*
666 Fifth Avenue, 27th Floor
New York, NY 10103
(212) 765-5770
gg@ggreenberglaw.com

# **Table of Contents**

**Page**

Table of Authorities.................................................................. iii

A. Introduction........................................................................ 1

B. Defendants' Position on This Appeal..................................... 4

C. Justice Lebovits' Recent Decision
    in *Knopf v. Sanford*........................................................... 5

D. Justice Lebovits' Recent Decision in
    *Knopf v. Feldman Associates, PLLC*.................................. 8

E. Ringel's Assistance in Persuading
    Phillips that the Sale Proceeds
    Did Not Have to Be Escrowed............................................ 9

F. Sanford's and Dechert' Use of
    Ringel's Advisory Opinion to Oppose
    the Contempt Application.................................................. 11

G. Argument........................................................................ 15

Point I
Ringel's Advisory Opinion Was State Action and
Could Not Be Solicited on an Ex Parte Basis................................ 15

      (a) Phillips' Admission Establishes that
      Ringel's Opinion Was State Action..................................... 15

      (b) Defendants' Argument that New York Attorney Ethics
      Rules Permitted the Call is Irrelevant and Wrong............... 17

Point II
The Knopfs Have Adequately
Alleged Actionable Prejudice........................................................ 20

(a) The Knopfs Were Prejudiced by the Ex Parte
Nature of the Call, Regardless of Whether
an Escrow Order Was Then in Effect................................... 20

(b) Actionable Prejudice Occurs Where
A Substantial Risk of an Error Exists
At The Time of the Procedural Defect................................. 22

Point III
The Amended June 16, 2016 Does Not Disinfect
the Prejudice Suffered by the Knopfs............................................. 27

(a) The Sua Sponte Nature of the 2016 Order Deprives
it of Both Preclusive and  Persuasive Effect........................ 27

(b) The Knopfs Did Not Have A Full and Fair Opportunity
to Contest The Disgorgement/Contempt Motion.................. 28

(c)   The First Department's Denial of the
Knopfs' Motion to Vacate the Amended
June 16, 2016 Order is Irrelevant.................................. 31

H. Conclusion............................................................................ 32

Certificate of Compliance........................................................... 33

# Table of Authorities

**Case**                                                                 **Page(s)**

*In re Abbott*
167 A.D.2d 617, 63 N.Y.S.2d 848 (3d Dept. 1990)...................... 19

*Adickes v. S.H. Kress and Co.*, 398 U.S. 144 (1970).................... 17

*Alba v. McElroy*, 1996 WL 695811 (S.D.N.Y., Dec. 4, 1996)....... 24

*Allen v. Men's World Outlet, Inc.*
679 F.Supp. 360 (S.D.N.Y. 1988).................................................. 29

*Bashein v. Landau*, 465 N.Y.S.2d 178 (1st Dept. 1983)................ 27

*Bogdan ex rel. Parra v. Marsh USA, Inc.,*
319 F.Supp.3d 633 (S.D.N.Y. 2018)............................................. 22-24

*Booker v. City of Atlanta*, 776 F.2d 272 (11th Cir.1985).............. 16

*Clark v. Glebe*
2010 WL 3583982 (W.D. Wash, Sept. 9, 2010)............................ 17

*Ciambriello v. County of Nassau*
292 F.3d 307 (2d Cir. 2002)........................................................... 18

*Cohane v. National Collegiate Athletic Ass'n ex rel. Brand*
215 Fed.Appx. 13 (2d. Cir. 2007).................................................. 16

*Colon v. Bermudez*
305 N.Y.S.2d 630 (Civ. Ct., New York Co. 1969)........................ 29

*Connecticut v. Doehr*, 501 U.S. 1 (1991)...................................... 6, 17, 25

*Costalas v. Amalfitano*
2005 WL 6214591 (Sup. Ct., New York Co., Jan. 27, 2005)........ 20

*Costalas v. Amalfitano*, 23 A.D.3d 303 (1st Dept. 2005)................ 20

**Table of Authorities (con'd)**
**Case**                                                        **Page(s)**

*In re Dinova*, 212 B.R. 437 (B.A.P., 2d Cir. 1997)...................... 17

*Dor v. District Director, I.N.S.*, 891 F.2d 997 (2d Cir. 1989)........ 25

*Dr. Jose S. Belaval, Inc. v. Perez-Perdomo*
465 F.3d 33 (1st Cir. 2006)............................................... 28

*East Bay Sanctuary Covenant v. Trump*
909 F.3d 1219 (9th Cir. 2018)............................................ 18-19

*In re Feit & Drexler, Inc.*
42 B.R. 355 (Bankr., S.D.N.Y. 1984)...................................... 26

*Fieldstone Capital, Inc. v. Loeb Partners Realty*
963 N.Y.S.2d 120 (1st Dept. 2013)........................................ 27

*Ferguson v. Fergus Enterprises, Inc.*
175 N.Y.S.2d 974 (Sup. Ct., New York Co. 1958)...................... 27

*Frankel v. J.P. Morgan & Chase Co.*
907 N.Y.S.2d 281 (2d Dept. 2010)........................................ 31

*Graham v. Board of Supervisors, Erie County*
49 Misc.2d 459, 267 N.Y.S.2d 383 (Sup. Ct., Erie Co. 1966)....... 26

*Hanrahan v. Doling*, 331 F.3d 93 (2d Cir. 2003).......................... 24

*Hodge v. Baptiste*
114 A.D.3d 830, 980 N.Y.S.2d 806 (2d Dept. 2014)................... 28

*International Controls Corp. v. Vesco*
556 F.2d 665 (2d Cir. 1977).............................................. 28

*Knopf v. Feldman Associates*, *PLLC*, Slip op. Index No. 153821/2019
(Sup. Ct., New York Co., July 11, 2019)........................................ 8-9

**Table of Authorities (con'd)**
**Case**                                                                    **Page(s)**

*Knopf v. Sanford*, 26 N.Y.S.3d 866 (1st Dept. 2016).................... 12

*Knopf v. Sanford* state court case, Slip op. Index No. 113227/2009
(Sup. Ct., New York Co., July 11, 2019)........................................ *passim*

*Kremer v. Chemical Construction Corp.,* 456 U.S. 461 (1982)..... 29

*Lambert v. Schreiber,*  944 N.Y.S.2d 902 (2d Dept. 2012)............ 31

*Mathews v. Eldridge*, 424 U.S. 319 (1976).................................... 24

*McGann v. Stock* 1989 WL 102032 (9th Cir. 1989)........................ 24

*In re Motors Liquidation Co.*, 829 F.3d 135 (2d Cir. 2016),
*cert. den. sub nom. General Motors LLC v. Elliott*,
137 S.Ct. 1813 (2017)...................................................................... 20, 22-24

*Mulder v. Donaldson, Lufkin & Jenrette*
648 N.Y.S.2d 535 (1st Dept. 1996)................................................. 31

*Nollet v. Justices of Trial Court of Com. of Massachusetts*
248 F.3d 1127, 2000 WL 1803320 (1st Cir., Dec. 7, 2000)............ 16

*Owens v. Treder*, 873 F.2d 604 (2d Cir. 1989)............................... 27, 31

*Park East Apartments, Inc. v. 233 East 86th Street Corp.*
529 N.Y.S.2d 674 (S.D.N.Y. 1988).................................................. 29

*In re Public Service Commission of New Hampshire*,
43 F.3d 763 (1st Cir. 1995).............................................................. 30

*State v. Kelly*, 992 A.2d 776 (N.J. 2010)......................................... 30

*Tierney v. Vale*, 304 F.3d 734 (7th Cir. 2002)................................ 16

**Table of Authorities (con'd)**
**Case**                                                                 **Page(s)**

*Tina X. v. John X.*, 32 N.Y.S.3d 332 (3d Dept. 2016)....................   19


*In re Trafalgar Associates*
53 B.R. 693 (Bankr., S.D.N.Y. 1985)..............................   26


*Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009)....................   23


*Trepel v. Dippold*
2006 WL 3054336 (S.D.N.Y., Oct. 27, 2006)................................   22


*United States v. Martínez-Mercado*
919 F.3d 91 (1st Cir. 2019).................................................   15, 16


*United States v. Reyes*, 302 F.3d 48 (2d Cir. 2002)......................   18


*West v. Atkins*, 487 U.S. 42 (1982)................................................   17

**Table of Authorities (con'd)**

**Page(s)**

## United States Code

42 U.S.C. §1983...................................................................... 1, 32

## Federal Rules of Appellate Procedure

F.R.A.P. 28(j)......................................................................... 5, 8

## New York Codes, Rules and Regulations

22 NYCRR Part 1200, §3.5(a)........................................... 18

## Civil Practices, Laws and Rules

CPLR 5015(a)(3)................................................................. 31

CPLR 6201(3)..................................................................... 20

CPLR 6301........................................................................... 26

## Atricles/Treatises

Thomas M. Fleming, *et al.*,
67A N.Y. Jur. 2d Injunctions §57 (Feb. 2016 Update)................. 27

Hon. David Saxe, "The Under-the-Radar Work of the
Appellate Division," New York Law Journal, July 22, 2016........ 13

*Restatement (Second) of Judgments* §28(5)(c) (1982).................. 30

Appellants Norma and Michael Knopf respectfully submit this reply brief in further support of their appeal.

As detailed below, an admission by Michael Phillips, the appellant in the companion appeal[1], and two recent decisions in related state court cases further compel reversal and the reinstatement of the Knopfs' §1983 claim.

## A. Introduction

This appeal concerns an *ex parte* call by defendants Nathaniel Akerman and Edward Feldman, to Melissa Ringel, the wife of defendant Frank Esposito. At the time, Ringel was a Court Attorney at the First Department.

In 2014, the Knopfs obtained summary judgment on their breach of loan agreement claims against Pursuit Holdings, LLC, which is owned by defendant Michael Sanford. The summary judgment decision did not determine damages. While awaiting the damages hearing, the Knopfs learned that Pursuit intended to sell one of the properties it had acquired with loans from the Knopfs, an apartment on 67th Street. The Knopfs sought a prejudgment attachment, which was denied at the trial level. They appealed to the First Department. While that appeal was pending, they obtained, on October 22, 2015, an order requiring that the proceeds of any sale of the 67th Street property to be paid into escrow. (A224-A225.)

---

[1] This appeal and the *Phillips* appeal (Dkt. 18-661) are to be argued in tandem.

Pursuit then cross-moved to vacate the escrow requirement, and that motion was denied on December 29, 2015. (A229.)

On January 11, 2016, Sanford retained and agreed to pay Esposito a $55,000 fee. (A212-A213.) Esposito understood he would not be paid until Sanford became "liquid."

On January 12, 2016, Akerman and Feldman, who were attorneys for Pursuit, called Ringel on her private line at the First Department, without including the Knopfs' attorneys on the call. (A1715-1716, A1759-A1762.) Feldman was Pursuit's real estate attorney. During this call, Ringel advised Akerman and Feldman, as Esposito had arranged for her to do, that notwithstanding the October 22, 2015 and December 29, 2015 orders, no escrow requirement remained in effect.

After obtaining Ringel's opinion, defendants used it to convince Phillips, who had contracted to purchase the 67th Street property, to close on terms permitting the sale proceeds to distributed, rather than escrowed.

On February 25, 2016, after learning of the sale and failure to escrow the proceeds, the Knopfs obtained a new escrow order from Appellate Division Justice Karla Moskowitz. (A226.) However, most of the sale proceeds had already been dissipated, and only $436,227.32 was paid into the Moskowitz-ordered escrow.

On February 25, the Knopfs moved in the First Department to, *inter alia*, hold Sanford and his appellate counsel, Dechert, LLP, in contempt of the escrow requirement. (A231-232.)

In opposing the contempt motion, Sanford and Dechert relied on Ringel's opinion – attributing it to an unidentified "Court Attorney" – as justification for their failure to escrow the sale proceeds. (A889, A889 n.5.)

However, Sanford's and Dechert's submissions in opposition to the contempt motion concealed from the Court that the unidentified Court Attorney, whose opinion they were relying on, was married to one of Sanford's lawyers, that the Court Attorney's husband would receive a $50,000 payment out of the sale proceeds and that the Court attorney was thus financially interested in the issue that defendants presented to her. (*Id.*)

After receiving Sanford's misleading submissions, on June 16, 2016, the First Department entered an order denying the Knopfs' contempt motion. (A235.) Within days the First Department amended the June 16 order *sua sponte – i.e.*, without giving the parties an opportunity to oppose the revision. (A236.) The sole purpose of the amendment was to adopt the reasoning defendants' attributed to the still-unidentified Court Attorney, as to why, despite the October 8, 2015 and December 29, 2015 rulings, no escrow requirement was in place at the time of the

sale.

**B.  Defendants' Position on This Appeal**

Defendants contend that the amended June 16, 2016 order establishes, in retrospect, that Ringel correctly opined that no escrow requirement was in place. From that conclusion, defendants posit that the Knopfs were not prejudiced by the call.  From the supposed lack of prejudice, defendants argue that the Knopfs did not have a right to be on the call.  This is the reverse of the due process jurisprudence. Under the decisions of this Court and the Supreme Court, prejudice is based on the *risk*, not certainty of error, and determined at the time of the procedural defect, not from hindsight provided by later opinions. (Knopfs' opening brief, pp. 32-34, Points I-A, II-A and II-B.)

Phillips' June 21, 2019 brief in the companion appeal states that his lawyer, Lori Braverman, "did nothing wrong by suggesting this call since *all she wanted to do was learn what the order meant from court personnel* as Phillips. . . [.]" Phillips' brief, Dkt. 18-661, Doc No. 172, at p. 39 (emphasis added).

By admitting that he required clarification from "court personnel" before distributing the proceeds, Phillips establishes that Ringel's opinion was adjudicatory state action.  (Point I-A, *infra*.)  That type of governmental intervention cannot be solicited except on notice to parties known to have an

interest in the outcome. (Point I-B, *infra*.)

## C. Justice Lebovits' Recent Decision in *Knopf v. Sanford*

On July 11, 2019, state court Justice Gerald Lebovits released a decision in the *Knopf v. Sanford* state court case, Slip op., Index No. 113227/2009 (Sup. Ct., New York Co., July 11, 2019).  The decision is appended to the Knopfs' July 14, 2019 F.R.A.P. 28(j) letter (17-4151, Doc. 212; 18-668, Doc 205), at ECF pp. 3-47 ("the July 11 *Knopf v. Sanford* decision")  The  decision overruled Akerman's claim that his  communications with Sanford regarding the call to Ringel were protected by the attorney-client privilege, finding that they were within the "wrongful act" exception.

Justice Lebovits' July 11 *Knopf v. Sanford* decision found, contrary to an argument defendants are making on this appeal, that Ringel was *wrong* when she advised Akerman and Feldman that no escrow order was then in place.  *Id.,* ECF p. 12 ("The First Department's subsequent denial of Sanford and Pursuit's motion to vacate the escrow order can be viewed only as recognizing the Knopfs' continuing interest in the proceeds of any sale."); ECF p. 13 ("[A]s of December 31, 2015, the First Department had determined two things relevant here:  First, that the PHC sale could go forward; and second, that, to enable the Knopfs to use the proceeds of any

5

PHC sale to satisfy any judgment it would likely obtain against Pursuit, Sanford had to put those sale proceeds into escrow.")

Justice Lebovits's disagreement with Ringel confirms that the Knopfs suffered actionable prejudice. *Connecticut v. Doehr*, 501 U.S. 1, 14 (1991) holds that prejudice, the "risk" of error, is substantial if the *ex parte* determination concerns a "not uncomplicated issue." That Justice Lebovits, as did Justice Moskowitz previously, disagreed with Ringel's opinion shows that, if Ringel wasn't wrong, nevertheless the issue was "not uncomplicated" and could not be determined without hearing both sides. (Point II, *infra*.)

Justice Lebovits' decision further found that the amended June 16, 2016 order did not preclude the Knopfs from establishing that Akerman's communications with Sanford regarding the call were within the wrongful acts exception to the attorney-client privilege. Justice Lebovits reasoned that Sanford and Dechert misled the First Department, when they opposed the Knopfs' contempt application, by concealing that the "Court Attorney" whose advice they cited as justifying Sanford's conduct was married to Sanford's own lawyer and financially interested in the issue, stating:

> "In June 2016 . . . the First Department issued an order denying the Knopfs' subsequent motion to hold Sanford in contempt and disgorge the sale proceeds; and that the Court explained in a revised

version of this order that it[] denied [the] contempt [application] based on the . . . legal conclusion that the Court itself had vacated the escrow order before Sanford sold Pursuit's property.

"Nonetheless, *this court concludes, reluctantly, that the First Department's revised June 2016 order refusing to hold Sanford in contempt does not . . . exonerate Sanford or his attorneys* [from the Knopfs' contention that
Akerman's communications with Sanford fell within the wrongful acts exception to the attorney client privilege].

". . . Sanford's attorneys withheld from the Court material information about Sanford's misconduct and the circumstances under which Sanford was able to sell Pursuit's property.
                                    * * *
"[T]he First Department panel that issued that June 2016 order lacked critical information that might have altered the panel's conclusion about whether the escrow order was still in force at the time of the sale. *In other words, if the Justices had known the truth about what happened in their Court, they might have discredited Sanford's factual recitations and rejected his legal arguments, and therefore have ruled against him, rather than for him.*

"Full disclosure would have alerted the First Department to the unusual and unethical steps Sanford undertook to keep the Knopfs from satisfying an imminent damages award."

*Id.,* ECF pp. 7-8.

The decision continued:

"McGuire knew that the court attorney referred to in Feldman's memorandum was Ringel. He knew that Ringel had been his law clerk. He knew that Ringel was married to Esposito, who was representing Sanford. He knew that only two days after the call, Ringel herself contacted him to inquire whether he would be interested in helping Esposito represent Sanford. He knew that Akerman and Feldman had called Ringel on Sanford's behalf without

7

counsel for the Knopfs being on the line or aware of the call.

* * *

"It would have been material for the Court, in assessing whether Sanford's actions relating to the PHC sale were wrongful and contumacious, to know that the legal opinion Sanford needed to circumvent the escrow requirement had been not only inadequately reasoned but also obtained from an individual with an obvious conflict of interest and in abnormal circumstances.

* * *

"*. . . [T]he evidence indicates that in issuing the Revised June 2016 Order,*
*the First Department did not possess material information regarding Sanford's conduct, in part because McGuire had withheld that information from the Court*. That information, had it been before the Court at the time, might have cast Sanford's actions in a different light and undermined the force of McGuire's arguments about the November 2015 Order and the escrow requirement. At the least, this court is not persuaded that it should ignore the evidence indicating that Sanford (and perhaps others) might have committed a wrongful act in light of a First Department order issued without the benefit of that very evidence."

*Id.,* ECF pp. 44-46.

Since the Knopfs did not receive a full and fair opportunity to contest the motion decided by the amended June 16, 2016 order, that order likewise has no preclusive effect in this case. (Point III, *infra*.)

## D. Justice Lebovits' Recent Decision in *Knopf v. Feldman Associates, PLLC*

The other July 11, 2019 decision by Justice Lebovits, *Knopf v. Feldman Associates*, *PLLC*, Slip op., Index No. 153821/2019 (Sup. Ct., New York Co., July 11, 2019), is appended to the Knopfs' July 14, 2019 F.R.A.P. 28(j) letter, at ECF

8

pp. 49-56 ("the July 11 *Knopf v. Feldman* decision").  It found that Esposito

received $50,000 out of the sale proceeds paid by a check drawn on Feldman's

escrow account on February 1, 2016, the day of the closing (*id.*, ECF p. 56), and

that Esposito retained that payment (but first denied doing so).  (ECF pp. 52-54,

53n.5.) It also found that Esposito falsely claimed the $50,000 from Feldman was a

fee for future services (ECF pp. 52-54, 53n. 5), an assertion Esposito also makes in

his brief (at pp. 29-30).

The *Knopf v. Feldman* decision thus refutes Esposito's November 8, 2017

declaration in the District Court that he kept none of the money he received out of

the closing. (A850, ¶¶6-7.)  Justice Lebovits' findings justify the inference that the

$50,000 was illegal consideration for Ringel's assistance.

Feldman's $50,000 check to Esposito Partners out of the closing proceeds

(*Knopf v. Feldman*, ECF p. 56) contradicts Feldman's statements below that he did

not know of Esposito's existence until more than a year later (A1229-A1230, ¶4;

A491).

**E.  Ringel's Assistance in Persuading
Phillips that the Sale Proceeds
Did Not Have to Be Escrowed**

In cross-moving to vacate the escrow requirement, Sanford had *already*

unsuccessfully argued that it should be terminated because a November 12, 2015

order had denied a prior request by the Knopfs for a preliminary injunction. (Knopfs' opening brief, pp. 14-15.) Ringel was enlisted to overcome this difficulty. As she explained when interviewed by OCA, after Esposito explained Sanford's understanding of the December 29 order to her, she requested copies of both that order and that of November 12. (A1722.) She then advised Esposito (A1723, A729:9-13), as she would later tell Akerman and Feldman (A1714, A1724, A1725, A526:5-10), that the October 22 escrow requirement, despite its mandatory nature, should be analogized to a temporary restraining order. That represented a change in Sanford's approach: his unsuccessful cross-motion to vacate the escrow requirement had referred to it as an "interim order" on 33 occasions, and not once as a TRO or restraint. (A597-640). Characterizing the escrow requirement as a TRO, Ringel believed, might permit Sanford to argue that, like a TRO, it would expire when the November 12 order was issued.

Ringel admitted to the OCA investigators that she was the source of this approach (A1714, A1724), and defendants agree (e.g., A230, A885, ¶13.) Feldman's memo describing the *ex parte* call referred to the escrow order as "interim restraint" in effect only until "the motion" for a preliminary injunction was decided (A230), *i.e.*, a TRO. As Justice Lebovits pointed out in his July 11 *Knopf v. Sanford* decision (ECF pp. 11, 21), Ringel's advice assumed (or

10

pretended) that the October 22 and November 12 decisions concerned the same

motion when, in fact they did not.  Knopfs' opening brief, pp. 13-15.

**F.  Sanford's and Dechert' Use of**
**Ringel's Advisory Opinion to Oppose**
**the Contempt Application**

On February 24, 2016, the Knopfs learned of the sale and failure to escrow

the proceeds.  On February 25, the Knopfs moved in the First Department for a

preliminary injunction mandating that the remaining proceeds, including Dechert's

retainer, be paid into escrow, and to hold Sanford and Dechert in contempt of the

escrow requirement.  The Knopfs also obtained a new escrow order from Justice

Moskowitz that required the amounts remaining to be paid into escrow.  (A234;

A143-144, ¶81.) In issuing that order, Justice Moskowitz's expressly relied upon

the December 29, 2015 order that had denied Sanford's cross-motion.  *Id.*

Sanford then transferred $436,227.32, but not the Dechert retainer, into the

Moskowitz-ordered escrow (A2222), the rest of the proceeds having been

dissipated (A144, ¶82.)

On March 8, 2016, Sanford and Dechert opposed the disgorgement/contempt

motion, invoking the advice of counsel:

> Given that . . . Sanford . . . took pains to solicit the *advice of*
> *two attorneys, both of whom informed him in writing after consulting*
> *with and being told by an attorney employed by this Court that the*
> *Interim Injunction had no legal force or effect* as a result of the

issuance of the First Order, there cannot be any doubt that at worst . . . Sanford made an honest mistake.

A889 (emphasis added). Sanford and Dechert also stated: "at the request of the Court, we will provide the two written memoranda to the Court for its *in camera* review." A889 n.5.

On March 24, 2016 the First Department decided the Knopfs' appeal from the denial of the attachment motion by enjoining Pursuit, from: "transferring, or further diminishing, impairing or encumbering the properties it acquired with real estate loans from plaintiffs, . . . as well as any proceeds derived from the sale of such properties prior to the date of this order[.]" *Knopf v. Sanford*, 26 N.Y.S.3d 866 (1st Dept. 2016). The injunction froze the $436,227.32 in the Moskowitz escrow, the unused $365,849.05 balance of the Dechert retainer (A144, ¶82; A2222; A283; A286 n.3), and Pursuit's fee interest in other properties purchased with loans from the Knopfs. The decision did not address the Knopfs' disgorgement/contempt motion (A232, ¶A), which remained *sub judice*.

On June 16, 2016, the First Department decided the Knopfs' disgorgement/contempt motion. The June 16 order stated that the request for an injunction disgorging the Dechert retainer into escrow had been resolved by the prior March 24, 2016 injunction freezing that retainer balance: ". . . Ordered that plaintiffs' request for an injunction is rendered moot in light of our decision on the

12

appeal (Appeal No. 723, decided March 24, 2016)."  (A235.)

Regarding the contempt application, the original order stated: "The motion and cross

motion are otherwise denied in all respects." *Id.* The omission of any express

reason for the outcome was standard.  Hon. David Saxe, "The Under-the-Radar

Work of the Appellate Division," *New York Law Journal*, July 22, 2016[2], p.3

("Unlike appellate decisions, motions are disposed of solely by order, with no

written decision explaining our reasoning.")

Five days later, an amended version of the June 16, 2016 order (A236) was

filed *sua sponte*, without any prior notice or even any release to the parties.[3]

Regarding the disgorgement request, the amended June 16 order was

essentially the same: "The underlying appeal has been decided (March 24, 2016)

rendering as moot plaintiffs' request for an injunction pending appeal."

Concerning the contempt application, the amended order differed from the

original because, atypically (*see* Saxe, *supra*) it provided a reason for denying the

_____

[2]available at
https://www.law.com/newyorklawjournal/almID/1202763318990/

[3]The June 16 order was released by means of a link to a single PDF (which included all 60 orders issued on June 16).  Though the amended order retains the June 16 date, the metadata for that PDF of the June 16 orders indicates it was modified on June 21 at 2:56:30 p.m.

contempt application: "The motion for contempt is denied because the TRO was vacated once plaintiffs' prior motion for a preliminary injunction was denied." (A236.) That legal conclusion is based on the view that Dechert and Sanford attributed to the unidentified Court attorney when they opposed the contempt/disgorgment motion. A884 (arguing, that like a TRO, the escrow order was deprived of "legal force and effect" when the November 12 order denied the prior preliminary injunction motion); A889 (attributing that view to Ringel).

The amended June 16 order, adopting Ringel's approach, refers to the October 22 escrow as a "temporary restraining order . . . ('TRO')" (A236).  In most, if not all other instances, the term used is "interim order," "interim relief" or "interim stay" (A294-315) and the December 29, 2015 ruling had referred to the October 22 escrow requirement as an "interim order."  (A229.)

The First Department was entitled to know that the Court Attorney whose view Sanford relied on (both in distributing the proceeds and opposing the contempt motion) was married to one of his own attorneys and financially interested in the matter. That disclosure was not made (A146, ¶88 - A147, ¶92; A1715), which caused Justice Lebovits' to decline to assign preclusive effect to the amended June 16 order. *Id.*, ECF pp. 7-8, 45-46.

## G. ARGUMENT

## Point I

### Ringel's Advisory Opinion Was State Action and Could Not Be Solicited on an *Ex Parte* Basis

**(a) Phillips' Admission Establishes that Ringel's Opinion Was State Action**

Phillips acknowledges that the *ex parte* call to Ringel was intended to satisfy

his own

lawyer, Braverman, who insisted on obtaining clarification regarding the escrow

requirement from "court personnel." (*Phillips* appeal, Dkt. 18-661, Doc. 172, p.

39.)

*United States v. Martínez-Mercado*, 919 F.3d 91 (1ˢᵗ Cir. 2019) held that a

policeman – Lopez-Torres – acted under color of law by participating in a plan

among rogue officers to hire private citizens to rob an apartment, stating:

> The conspirators literally employed the colors of the law in the form of a marked on-duty police vehicle to do *what no private individual could do* – divert private and police interlopers by creating the appearance of legitimate police involvement. The *plan also addressed the risk of a citizen call to the police by exploiting López-Torres's official capacity to forestall any investigation at the scene*.

*Id.* at 100.

Ringel did what "no private citizen" could do: satisfy Braverman's

insistence that, before closing, a cachet of governmental approval had to attach to the agreement to distribute proceeds.  *Booker v. City of Atlanta*, 776 F.2d 272, 274 (11th Cir.1985) (state action exists where the government employee's role gives "a cachet of legality" to private conduct); *Tierney v. Vale*, 304 F.3d 734, 741 (7th Cir. 2002) ("using [governmental] office to magnify the impact of" the state actor's conduct establishes state action); *Cohane v. National Collegiate Athletic Ass'n ex rel. Brand*, 215 Fed.Appx. 13, 15-16 (2d. Cir. 2007) (public university's "imprimatur" of defamatory NCAA report was state action).

As in *Martinez-Mercado*, the plan here "addressed a risk" that the Knopfs would move to enforce the escrow requirement by means of a contempt motion, something Feldman and Braverman feared. (*Phillips* Appendix, 18-661, at A2715.) As Justice Lebovits stated in his recent decision:

> [T]here is a reasonable basis to suspect that Sanford made an improper arrangement with one of his attorneys and that attorney's wife – then a First Department special master – to get out from under a binding First Department escrow order, dissipate 85% of the funds subject to that order, avoid being held in contempt, and dodge returning $3 million he had improperly dissipated.

*Knopf v. Sanford* decision, ECF p. 44.

Ringel was a state actor.  *Nollet v. Justices of Trial Court of Com. of Massachusetts*,  2000 WL 1803320, *1 (1st Cir., Dec. 7, 2000) ("A judge acting in his adjudicatory capacity is a state actor acting under color of state law, . . .")  That

she actually lacked authority to issue clarifying opinions is irrelevant. *West v. Atkins*, 487 U.S. 42, 49, 55-56 (1982) (state action inquiry focuses on "the nature of the governmental actor's conduct, rather than the terms of [her] employment[.]"); *accord: Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 152 (1970).

Adjudicatory state action that threatens irreparable harm to a property interest cannot be obtained by unilateral communications with the court. *Connecticut v. Doehr*, *supra* (Connecticut's *ex parte* attachment statute did not satisfy due process); *In re Dinova*, 212 B.R. 437, 445 (B.A.P., 2d Cir. 1997) ("[T]he American judicial system . . . forbids *ex parte* communications on substantive matters by statute, rule and code of ethics."); *Clark v. Glebe*, 2010 WL 3583982, *1 (W.D. Wash, Sept. 9, 2010) ("Letters addressed to the clerk asking for legal advice and clarification of a court order are inappropriate, as is any other form of *ex-parte* communication with the court.")

**(b) Defendants' Argument that New York Attorney Ethics Rules Permitted the Call is Irrelevant and Wrong**

Defendants do not deny that Ringel's conduct was state action. Instead, they argue that the call was permitted under New York attorney ethics rules. Defendants do not actually believe this. If they did, they would not have concocted the false account of a transferred call (when they actually called Ringel directly), or

17

perjured themselves to deflect the allegation that the call was unlawful, as the OCA Report establishes. *United States v. Reyes*, 302 F.3d 48, 56 (2d Cir. 2002) ("it is reasonable to infer guilty knowledge from Reyes' false exculpatory statement").

New York professional ethics law is irrelevant. Federal, not state, law determines "what process is due." *Ciambriello v. County of Nassau*, 292 F.3d 307, 321 n. 7 (2d Cir. 2002)

While §3.5(a) of the New York Rules of Professional Conduct doesn't prohibit *ex parte* communications that don't pertain to the merits, the call to Ringel directly concerned the merits. During preceding year, the parties had battled over whether the 67th Street property could be sold and the proceeds placed beyond the Knopfs' reach as eventual judgment creditors. At the time of the call, the issue was soon to be decided by the First Department when it heard the appeal. Akerman's call and Ringel's advisory opinion usurped the First Department's authority to decide that issue, as Feldman's *pro se* memorandum admits. (A490-A491.) Akerman admits that he called Ringel to understand the interplay of three separate orders, *i.e.*, to synthesize the law of the case. (A512:22-A513:6.)

New York professional conduct rules do not permit *ex parte* communications regarding what courts sometimes call "the merits of a procedural issue." *E.g.*, *East Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219, 1219 (9th Cir.

2018). *In re Abbott*, 167 A.D.2d 617, 618, 63 N.Y.S.2d 848, 849 (3d Dept. 1990) held that an *ex parte* communication with Court "explaining [the] default" – *i.e.*, the merits of why it might be excused – "and inquiring about procedures for reopening it" . . . "violat[ed] . . . the Code of Professional Responsibility." *Accord: Knopf v. Sanford decision*, ECF p. 19 (Ringel violated rules governing judicial conduct by responding to Akerman and Feldman's questions without the Knopfs' counsel on the line).

Defendants argue that *Tina X. v. John X.*, 32 N.Y.S.3d 332 (3d Dept. 2016) holds that "communications after a judicial decision about the procedural status of a matter are not improper *ex parte* communications." (Dorsey/Akerman brief, p. 42.) The communication in *Tina X* did not concern a decision, was not about procedure, or about the status of anything, and occurred prior to the attorney's appearance. It was a pre-appointment disclosure by a lawyer under consideration as Court-appointed representative for the children in a custody case that previously, as a prosecutor, he had charged the mother with child endangerment. 32 N.Y.S.3d at 333. The communication was deemed permissible because: "The challenged communication occurred *prior to Bielicki's appointment as attorney for the children* and, moreover, did not address the 'merits of the matter'[.]" 32 N.Y.S.3d at 335.

Defendants also cite *Costalas v. Amalfitano*, 23 A.D.3d 303, 304 (1ˢᵗ Dept. 2005). *Costalas* concerned a time entry by defendants attorney that stated: "In court and spoke to judge re procedures for attorneys fees and costs," *Costalas v. Amalfitano*, 2005 WL 6214591 (Sup. Ct., New York Co., Jan. 27, 2005). The trial court decision in *Costalas* reveals that the communication did not relate to a matter ever before the court, that it occurred after dismissal and that no fee application was filed. *Id.* at *1.

By contrast, Akerman's call occurred when the Knopfs' appeal was *sub judice*, and concerned the same issue raised by the appeal – whether Pursuit could "assign, dispose of, or encumber" its property prior to the Knopfs reducing the summary judgment in their favor to a judgment lien. CPLR 6201(3).

### Point II

### The Knopfs' Have Adequately
### Alleged Actionable Prejudice

**(a) The Knopfs Were Prejudiced by the *Ex Parte* Nature of the Call, Regardless of Whether an Escrow Order Was Then in Effect**

*Motors Liquidation* establishes the Knopfs' right to participate in the call regardless of whether their position that an escrow order was then in place was later held to be right or wrong. In *Motors Liquidation*, the bankruptcy court held that plaintiffs, creditors consisting of Chevrolet Cobalt purchasers, had been

entitled to, but did not receive, actual notice of a sale order that extinguished their product defect claims. The bankruptcy court nevertheless rejected the plaintiffs' due process argument because other creditors filed the objection the plaintiffs would have made, and it was overruled. This Court reversed, holding that actionable prejudice is broader than an impairment of the ability to advance legally correct arguments:

> [W]hile we cannot say with any certainty that the outcome would have been different, we can say that the business circumstances at the time were such that plaintiffs could have had some negotiating leverage, and the opportunity to participate in the proceedings would have been meaningful.

829 F.3d at 164.

Had the Knopfs been on the call – whether their position that an escrow requirement was then in place later turned out to be right or wrong – the opportunity would have been meaningful.

They would have learned Phillips' identity as the party who had contracted to buy the apartment, and could have tried to negotiate a waiver of their rights under the October 22 and December 29 rulings in exchange for cash from Phillips.

Had they been on the call they would have obtained a *new* escrow order, just like that entered by Justice Moskowitz on February 25, 2016, but done so before, rather than after, the sale and dissipation of all but $436,227.32 of the proceeds. In

*Trepel v. Dippold*, 2006 WL 3054336 (S.D.N.Y., Oct. 27, 2006) (Cote, J.), the

District Court found that the plaintiff had adequately alleged that he was prejudiced

by the adversary attorney's representation that the defendant would not remove

assets from the country because:

> . . . Judge Lynch would have issued an attachment order earlier
> [before rather than after the assets were transferred overseas] and
> Trepel's attorneys may have acted differently [by forcing a decision
> on their motion earlier] had Dippold not made misrepresentations [that
> property would not be removed from the jurisdiction] during the
> attachment hearing or had Dippold not delayed in reporting Diop's car
> shipments.

*Id.* at *5 (bracketed material supplied).

**(b) Actionable Prejudice Occurs Where
    A Substantial Risk of an Error Exists
    At the Time of the Procedural Defect**

Prejudice is determined at the time of the procedure defect, rather than from

hindsight provided by subsequent rulings. *Motors Liquidation rejected* the

bankruptcy court's holding that "there is no prejudice if *in hindsight* the outcome

would have been the same with adequate notice." 829 F.3d. at 161.

*Bogdan ex rel. Parra v. Marsh USA, Inc.,* 319 F.Supp.3d 633 (S.D.N.Y.

2018) concerned an asbestosis victim's claims that Marsh, Johns-Manville's

insurance broker, had conspired to hide asbestos hazards. The due process

question concerned a 1986 agreement settlement of claims by victims without

22

manifested symptoms against Marsh and Manville's insurers. Years later, in

*Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009), the Supreme Court declared

that the terms of the 1986 agreement established that these victims' Future Claims

Representative ("FCR") settled not only claims based on policies issued to

Manville, but also so-called direct claims that Marsh and the insurers concealed

asbestos dangers from the public.

In *Bogdan*, the bankruptcy court rejected an asbestosis victim's argument

that he had been deprived of due process by the 1986 agreement, reasoning that, in

*Bailey*, the Supreme Court declared that the 1986 agreement had settled such direct

claims. On appeal, Judge Rakoff, citing *Motors Liquidation*, held that *Bailey* did

not retrospectively defeat the plaintiff's allegation of prejudice because: "It is

difficult to evaluate in hindsight whether the outcome would have been any

different had the FCR adequately represented future claimants as to these claims."

319 F.Supp.3d at 643.

Here, the amended June 16, 2016 ruling – like the bankruptcy court's

overruling of the objection the Cobalt purchasers would have made in *Motors

Liquidation* and the *Bailey* decision that Marsh relied on in *Bogdan* – does not

retroactively cleanse the prejudice the Knopfs suffered by reason of their exclusion

from the call.

Actionable prejudice is what *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) calls "the *risk* of an erroneous deprivation." As used in *Mathews*, risk means "the possibility an erroneous determination. . . [.]" *McGann v. Stock*, 1989 WL 102032, *4 (9th Cir. 1989).

Prejudice is assessed at the time of the procedural defect, here, on January 12, 2016, when Akerman placed the *ex parte* call and when the December 29 order appeared to leave the escrow requirement in place. *Hanrahan v. Doling*, 331 F.3d 93, 98-99 (2d Cir. 2003) ("[T]he . . . concept of fair notice necessarily turns on what defendants believed *ex ante* at the time they allegedly denied Hanrahan the procedural safeguards that may have prevented Hanrahan's mistaken . . . confinement."); *Motors Liquidation*, 829 F.3d at 164 ("we can say that the . . . circumstances *at the time* [notice was required] were such that . . . the opportunity to participate in the proceedings would have been meaningful[.]"); *Bogdan*, 319 F.Supp.3d at 643 (prejudice occurred because, when *the 1986 orders were being negotiated,* the FCR believed direct claims to be outside his representation).

Ringel's lack of neutrality raised the risk or error. *Alba v. McElroy*, 1996 WL 695811, *3 (S.D.N.Y., Dec. 4, 1996) (Cote, J.) ("There is also a risk of an erroneous deprivation of Alba's liberty interest through the procedure of issuing a parole decision without a hearing before an impartial adjudicator.")

The difficulty of the issue presented to Ringel – from defendants' point of view[4] – also

raised the risk of error. *Connecticut v. Doehr*, *supra* (prejudgment attachment

statute created "substantial" risk of error by allowing *ex parte* determinations that

were not "uncomplicated").

The "not uncomplicated" nature of the issue is established by Justice

Lebovits' holding, *supra*, that Ringel was *wrong*. *Knopf v. Sanford* decision, at

ECF pp. 12, 13. As Justice Lebovitz explained, Ringel was mistaken because she

wrongly assumed that the October 22 and November 12 motions related to the

same motion. *Id.*, ECF pp. 11, 21.

Justice Lebovits, like Justice Moskowitz before him, found that by denying

Sanford's cross-motion to vacate the escrow requirement, the December 29 order

left it in place. *Dor v. District Director, I.N.S.*, 891 F.2d 997, Appendix, Item 18

("This Court denies the INS's motion, to vacate its 1/20/87 order staying Dor's

deportation. Consequently, [the] stay issued on 1/20/87 remains in effect.")

Ringel's view that the escrow order should be viewed as a TRO which

---

[4]The Knopfs believe that the issue was clear, specifically, that "denied," as used in the December 29 ruling means "denied," and that the view, enunciated by Ms. Ringel and then by a succession of Sanford's attorneys, that it means something else is praise for the emperor's new clothes.

expired when the November 12 order was entered was wrong not only because it mistakenly presumed that the October 22 and November 12 rulings concerned the same motion, but also because an escrow order is conceptually and practically distinct from a TRO.

A TRO – a *restraint* – is a prohibitory injunction, and specifically authorized under CPLR 6301. Due to its prohibitory nature, a TRO *necessarily* expires when the underlying motion for a preliminary injunction is denied.

However, an escrow order is a *mandatory*, not prohibitory, injunction, one that *compels* a deposit into a designated account. *In re Feit & Drexler, Inc.*, 42 B.R. 355, 359 (Bankr., S.D.N.Y. 1984) (order that money be escrowed was a "mandatory injunction"); *accord: In re Trafalgar Associates*, 53 B.R. 693, 696 (Bankr., S.D.N.Y. 1985).

Mandatory injunctions, such as escrow orders, are not contemplated by CPLR 6301; instead, a the power to issue them derives from a court's inherent powers. Thomas M. Fleming, *et al.*, 67A N.Y. Jur. 2d Injunctions §57 (Feb. 2016 Update) ("[CPLR 6301] specifying the grounds for preliminary injunctions speaks only in terms of 'restraining' the commission or continuance of acts[.]"); *Graham v. Board of Supervisors, Erie County*, 267 N.Y.S.2d 383, 387 (Sup. Ct., Erie Co. 1966) (noting that TROs are prohibitory injunctions, that only prohibitory

injunctions are authorized by CPLR 6301, and that the power to enter mandatory injunctions stems from precedent, rather than statute).

Since escrow orders are mandatory injunctions, New York courts will enter or continue an escrow order, while simultaneously denying a broader preliminary injunction. *Bashein v. Landau*, 465 N.Y.S.2d 178, 179 (1st Dept. 1983); *Fieldstone Capital, Inc. v. Loeb Partners Realty*, 963 N.Y.S.2d 120, 121-122 (1st Dept. 2013); *Ferguson v. Fergus Enterprises, Inc.*, 175 N.Y.S.2d 974, 977-978 (Sup. Ct., New York Co. 1958). Since the October 22 escrow requirement was a *mandatory* temporary injunction, the December 29 order is another of such decisions.

Whether the view of Justices Lebovits and Moskowitz (and the Knopfs), or that of Ringel, is correct is what *Doehr* means by a "not uncomplicated" issue, where substantial risk of error occurs if the Court hears only one side.

## Point III

### The Amended June 16, 2016 Does Not Disinfect the Prejudice Suffered by the Knopfs

**(a) The *Sua Sponte* Nature of 2016 Order Deprives it of Both Preclusive and Persuasive Effect**

The *original* June 16, 2016 order denied the Knopfs' contempt motion. However, it does not impair the Knopfs' property interest, as protected by the First Department's prior orders, since it did stated no reasoning. *Owens v. Treder*, 873

F.2d 604, 610 (2d Cir. 1989) (appellate order that did not set forth reasoning had no preclusive effect).

*Dr. Jose S. Belaval, Inc. v. Perez-Perdomo*, 465 F.3d 33 (1ˢᵗ Cir. 2006) reasoned that since a chose-in-action is property, a preliminary injunction that protects its value is likewise property and due process requires that the injunction cannot be amended unless the parties have an opportunity to propose the revision. *Id.* at 37 & n.4. Under *Belaval* and other decisions the Knopfs cite (including *International Controls Corp. v. Vesco*, 556 F.2d 665, 668 n.2 (2d Cir. 1977)), given its *sua sponte* genesis, the June 16 amendment did not impair the Knopfs' interest in the sale proceeds as embodied in the October 22, 2015 and December 29, 2015 orders and the March 24, 2016 injunction, and as uneffected by the original June 16 order. June 11 *Knopf v. Sanford* decision, at ECF p.12 (finding that the October 22 and December 29 rulings recognized the Knopfs' "significant" and "continuing" interest in the sale proceeds).

**(b)  The Knopfs Did Not Have A Full and Fair Opportunity to Contest The Disgorgement/Contempt Motion**

Contrary to defendants' argument, the amended June 16 order did not have any collateral estoppel effect. *Hodge v. Baptiste*, 980 N.Y.S.2d 806 (2d Dept. 2014) ("Since the . . . Court's finding that the appellant did not 'own[]' the subject note and mortgage was made *sua sponte* . . . , and, thus, deprived the appellant of a

full and fair opportunity to litigate that issue, [it] would not be entitled to collateral estoppel effect. . . [.]").

Collateral estoppel does not apply against a party that did not have a full and fair opportunity to contest the prior determination, which means compliance with due process. *Colon v. Bermudez*, 305 N.Y.S.2d 630, 638 (Civ. Ct., New York Co. 1969 ("The 'full and fair opportunity test' . . . mandates that due process must be afforded the party against whom the doctrine of 'collateral estoppel' is sought to be invoked."); *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 481 (1982) (state proceedings must meet the due process requirements for collateral estoppel to apply).

Also, denial of a motion for a preliminary injunction is not accorded collateral estoppel effect, *Park East Apartments, Inc. v. 233 East 86th Street Corp.*, 529 N.Y.S.2d 674, 676 (S.D.N.Y. 1988), nor is the denial of a contempt motion, *Allen v. Men's World Outlet, Inc.*, 679 F.Supp. 360, 364-365 (S.D.N.Y. 1988).

Justice Lebovits' July 11, 2019 decision is a 43-page, single-spaced essay on how the Knopfs were deprived of a full and fair opportunity to contest the contempt motion. Among other reasons cited by Justice Lebovits, Sanford and Dechert attempted to defeat that motion by citing the views of an unidentified Court Attorney without disclosing that she was married to one of Sanford's

lawyers and financially interested in the matter. July 11 *Knopf v. Sanford decision*, ECF pp. 7-8, 44-46; *see also: id.*, ECF p. 19 ("Esposito had obvious financial and legal interests in the outcome of the conversation among Akerman, Feldman, and Ringel."); ECF p. 44 (finding "a reasonable basis to believe that Sanford used communications with his various attorneys (Akerman, Feldman, Esposito, and McGuire) to carry out an outrageous scheme that perverted the administration of justice").

Thus neither preclusive nor persuasive value attaches to a prior determination. *State v. Kelly*, 992 A.2d 776, 788 (N.J. 2010 ("[A]n ultimate fact founded on perjured testimony is not fairly procured, and it is doubtful that collateral estoppel requires one unjust result to perpetuate another unjust result."); *In re Public Service Commission of New Hampshire*, 43 F.3d 763m 768 (1st Cir. 1995) (collateral estoppel likely would not apply "if we were dealing with a true case of secret fraud, [since] the same concealment that was the gravamen of the collateral attack would likely have constituted a fraud on the [prior] court"); *Restatement (Second) of Judgments* §28(5)(c) & comment j (1982) (exception to issue preclusion exists when concealment of material information in the first action denies a party a "full and fair adjudication")

**(c) The First Department's Denial of the
Knopfs' Motion to Vacate the Amended
June 16, 2016 Order is Irrelevant**

On November 2, 2017, the First Department denied, without stating a

reason, the Knopfs' motion to vacate the amended version of the June 16, 2016.

(A576.) That ruling has no effect.  Collateral estoppel only bars litigation of an

issue that was previously "expressly" or "necessarily" decided against a party.

*Frankel v.  J.P. Morgan & Chase Co.*, 907 N.Y.S.2d 281, 284-285 (2d Dept.

2010).  The November 2, 2017 decision did not set forth its reasoning, so its not an

"express" determination. *Owens v. Treder*, *supra*.  Motions to vacate on grounds of

mistake under CPLR 5015(a)(3) are committed to the Court's discretion. *Lambert*

*v. Schreiber*,  944 N.Y.S.2d 902, 903 (2d Dept. 2012).  A discretionary

determination that provides no explanation for the outcome has no preclusive

effect, and does not establish the law of the case. *Mulder v. Donaldson, Lufkin &*

*Jenrette*, 648 N.Y.S.2d 535, 538 (1st Dept. 1996) ("[T]his Court's denial of

reargument, which is a purely discretionary decision, did not specify the basis for

the decision and . . . should not have served as a basis for the IAS court's denial of

DLJ's motion.")

The Knopfs' reply papers on the motion to vacate the amended June 16

order were filed on August 14, 2017. (A590.)   At that point, they had not obtained

Esposito's contract with Sanford, or learned of the payments from Sanford and Feldman to Esposito. The OCA Report did not exist, and the Knopfs had not yet deposed, or obtained documents from, Akerman, Esposito, Ringel, Glassman and Braverman, and had not enforced their subpoenas to Sanford's banks, and Phillips' title agencies.

## H. Conclusion

The §1983 claim should be reinstated, leave to amend granted, and the sanctions and fee award vacated

Dated: New York, New York
        July 16, 2019

Berry Law PLLC                          /s/ Gary Greenberg
      /s/ Eric W. Berry                 Gary Greenberg, Esq.
By: _____                          666 Third Avenue, 10th  Floor
      Eric W. Berry                     New York, New York   10103
745 Fifth Avenue, 5th Floor                   (212) 765-5770
New York, New York  10151
(212) 355-0777

*Attorneys for plaintiffs-appellants Norma Knopf and Michael Knopf*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I hereby certify that the foregoing brief is in 14-point proportionately-spaced Times New Roman type. According to the word processing system used to prepare this brief (WordPerfect X8 for Windows), the word count of the brief is 6990, not including the table of contents, table of authorities, certificate of service and this certificate of compliance.

/s/ Eric W. Berry

_____
Eric W. Berry